A05A1845. ATLANTA SAND & SUPPLY COMPANY v. THE CITIZENS BANK.
(622 SE2d 484)

BLACKBURN, Presiding Judge.

Atlanta Sand & Supply Company sued The Citizens Bank for conversion, alleging that for a period of six years, Citizens Bank accepted deposits over endorsements forged by Atlanta Sand employee Lisa Leslie and unlawfully provided Leslie with cash back totaling approximately $239,000. Citizens Bank moved for summary judgment, arguing that Leslie had authority to endorse instruments and that Citizens Bank was not liable for her abuse of that authority. The trial court entered summary judgment in favor of Citizens Bank and Atlanta Sand filed this appeal. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So construed, the evidence shows that in October 1995, Atlanta Sand opened a savings account with the local Citizens Bank to which employees could make contributions from their paychecks. The account was not intended to serve as a business account but as a source of emergency funds for employees. In April 1996, Atlanta Sand

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

provided Citizens Bank with a corporate resolution designating the officers and employees authorized to administer the account. The resolution stated in part:

> [T]he Secretary is directed to certify to said depository . . . a statement naming the officers of this corporation authorized to endorse or sign notes, drafts, checks, etc., with specimens of their respective signatures for use by said depository for purposes of comparison; and such signature shall be binding upon this corporation until revocation in writing be filed with said bank; and
>
> FURTHER RESOLVED that all drafts, checks, etc., drawn against such account shall be signed by the following: *(State whether such papers must bear one or more signatures.)* One signature must be either Dugger Jamison or Lisa Leslie.

The resolution further stated that

> Any officer mentioned above [(only Jamison's and Leslie's names appear above)] is authorized to endorse all notes, checks or drafts payable to the corporation and deposited to the credit of such account, or such endorsement may be made by rubber stamp or facsimile signature. The bank is hereby authorized to honor, receive, certify or pay all instruments signed in accordance with the foregoing resolution even though drawn or endorsed to the order of any officer signing the same, payable to cash or bearer or in payment of the individual obligation of such officer, or for deposit to his personal account and said bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance.

Below this language, the resolution also listed three officers (all vice-presidents) and their signatures. In addition, Atlanta Sand provided Citizens Bank with a signature card for the account which listed Jamison and Leslie as authorized signatories (with only one signature required) and contained examples of their respective signatures.

At some point in 1997, Leslie began taking customer checks payable to Atlanta Sand for walk-in sand sales and endorsing those checks for deposit into the savings account. Leslie usually endorsed the checks with the words "Atlanta Sand" or a rubber-stamped signature for Jamison. On the deposit ticket, Leslie signed her own

name to request cash back and unlawfully pocketed those funds for her own use. Leslie continued this cash back scheme until Atlanta Sand discovered the embezzlement in January 2003. Citizens Bank had no actual knowledge of Leslie's embezzlement until Atlanta Sand informed it shortly after the scheme was discovered.

In June 2003, Atlanta Sand filed a complaint against Citizens Bank, alleging conversion pursuant to OCGA § 11-3-420. Specifically, Atlanta Sand claimed that Citizens Bank was liable for conversion because it accepted deposits to the account over endorsements forged by Leslie and allowed her unlawfully to obtain cash back from those deposits. Following discovery, Citizens Bank moved for summary judgment. The trial court granted Citizens Bank's motion, declaring that the corporate resolution and signature card authorized Leslie to endorse instruments relevant to the account and that Citizens Bank was not liable for Leslie's abuse of that authority. This appeal followed.

Atlanta Sand argues that (i) the corporate resolution did not grant Leslie authority to endorse checks for deposit to its account with Citizens Bank, (ii) OCGA § 7-1-352 does not shield Citizens Bank from liability for Leslie's embezzlement, and (iii) questions of fact remain regarding whether Citizens Bank is liable for conversion. We disagree and affirm the trial court's order.

1. Atlanta Sand first contends that the corporate resolution did not grant Leslie authority to endorse checks for deposit to its savings account with Citizens Bank and that therefore such endorsements constituted forgeries. Atlanta Sand further contends that Citizens Bank is liable for conversion because it accepted these deposits and provided cash back over forged endorsements. We hold that the corporate resolution and signature card granted Leslie authority to endorse checks for deposit to the subject account (as well as to draft checks from the account) and that consequently Citizens Bank is not liable for conversion.

Georgia law holds that "the relationship between a bank and its depositor is contractual in nature." *APCOA v. Fidelity Nat. Bank.*[2] See *Fed. Deposit Ins. Corp. v. West.*[3] Such contracts are often evidenced in the form of a corporate resolution, which designates the agents authorized to act on the corporation's behalf with regard to the relationship between the corporation and its bank. See *Trust Co. of Ga. v. Nationwide Moving &c. Co.*[4] Here, the issue is whether the corporate resolution that Atlanta Sand provided to Citizens Bank

[2] *APCOA v. Fidelity Nat. Bank*, 703 FSupp. 1553, 1559 (N.D. Ga. 1988).

[3] *Fed. Deposit Ins. Corp. v. West*, 244 Ga. 396, 399 (260 SE2d 89) (1979).

[4] *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, 235 Ga. 229, 233 (219 SE2d 162) (1975).

granted Leslie authority to endorse deposits to and to withdraw money from the subject account.

In construing a written contract "the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." *Woody's Steaks, LLC v. Pastoria.*[5] Atlanta Sand's corporate resolution states that "all drafts, checks, etc., drawn against such account shall be signed by the following: (*State whether such papers must bear one or more signatures.*) One signature must be either Dugger Jamison or Lisa Leslie." The corporate resolution further states:

> Any officer mentioned above [(Jamison and Leslie are the only names listed above)] is authorized to endorse all notes, checks or drafts payable to the corporation and deposited to the credit of such account, or such endorsement may be made by rubber stamp or facsimile signature. The bank is hereby authorized to honor, receive, certify or pay all instruments signed in accordance with the foregoing resolution even though drawn or endorsed to the order of any officer signing the same, payable to cash or bearer or in payment of the individual obligation of such officer, or for deposit to his personal account and said bank shall not be required or be under any obligation to inquire as to the circumstances of the issuance.

In conjunction with the resolution, Atlanta Sand also completed a signature card which listed Jamison and Leslie as authorized signatories for the account (with only one signature required) and contained examples of their signatures. We hold that the language in these two documents is clear and unambiguous. The corporate resolution in combination with the signature card clearly granted Jamison and Leslie the authority to act on behalf of Atlanta Sand with regard to this account. This authority included signing drafts and checks (i.e., withdrawing money), as well as endorsing checks for deposit.

Atlanta Sand's argument that neither Jamison nor Leslie had authority to endorse checks or withdraw money because neither was specifically designated as an "officer" in the corporate resolution fails in light of our decision in *Bank South v. Grand Lodge &c.*[6] There we held that an agent's authorized signature in the application for an

---

[5] *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).
[6] *Bank South v. Grand Lodge &c.*, 174 Ga. App. 777 (331 SE2d 629) (1985).

account granted the agent authority despite his title as an officer not being noted with his signature and despite his name not being listed in the specific part of the form requesting the names of those authorized to make withdrawals. Id. at 778, 780-781 (1). We further held that given the agent's legitimate authority over the account, the bank was not liable for conversion based on his abuse of that authority. Id. at 782 (2).

In the case at bar, both Jamison — whose rubber-stamped signature was used by Leslie to endorse checks — and Leslie were clearly designated in the corporate resolution and on the signature card as agents with authority to act for Atlanta Sand on this account. The fact that neither was specifically designated as an officer is therefore irrelevant. See *Bank South*, supra at 778.

Atlanta Sand further argues that Leslie's depositing of customer checks, as opposed to employee checks, into the savings account and endorsing those checks with a rubber-stamped signature violated Atlanta Sand's internal policies and thus evinced her lack of authority. This argument is without merit. Leslie's actions did not contravene the authority granted to her by the corporate resolution; therefore, whether her actions violated Atlanta Sand's internal policies only reflects whether she abused her authority, not whether she lacked authority. As Citizens Bank is not liable for any abuse of Leslie's authority, the trial court's summary judgment order was proper. See *Bank South*, supra at 782 (2); *Grogan v. Lanier Bank &c. Co.*[7]

2. Atlanta Sand next argues that OCGA § 7-1-352[8] does not shield Citizens Bank from liability because the statute only protects banks from liability when misdeeds are perpetrated by authorized agents of the account owner. This argument is without merit.

The purpose of OCGA § 7-1-352 is "to protect a bank from liability where an agent or fiduciary misappropriates funds of the owner in breach of his agency or trust without the bank's knowledge." *Trust Co. of Ga.*, supra at 230. This Court has similarly held that the

---

[7] *Grogan v. Lanier Bank &c. Co.*, 219 Ga. App. 313, 314 (1) (464 SE2d 892) (1995).

[8] OCGA § 7-1-352 (a) provides:

Whenever any agent, administrator, executor, guardian, trustee, either express or implied, or other fiduciary, whether bona fide or mala fide, shall deposit any money in any bank to his credit as an individual, or as such agent, trustee, or other fiduciary, whether the name of the person or corporation for whom he is acting or purporting to act be given or not, such bank shall be authorized to pay the amount of such deposit, or any part thereof, upon the order of such agent, administrator, executor, guardian, trustee, or other fiduciary, signed with the name in which such deposit was entered, without being accountable in any way to the principal, cestui que trust, or other person or corporation who may be entitled to or interested in the amount so deposited.

statute "protects a bank from liability for embezzlement by a signatory on a corporate bank account where the person setting up the account had the authority to do so and where the bank was without knowledge of the embezzlement." *Family Partners Worldwide v. SunTrust Bank, Atlanta.*[9] Based on our ruling in Division 1 that Leslie was authorized to endorse deposits to and withdraw money from the account, our inquiry focuses on whether Citizens Bank had actual knowledge of Leslie's wrongdoing.

While never explicitly arguing that Citizens Bank knew of Leslie's illegal actions, Atlanta Sand nevertheless insinuates that her suspicious activities should have put Citizens Bank on notice. We disagree. It is well-settled Georgia law that:

> To charge a bank with notice that a depositor is acting in violation of his trust so as to render it liable for the amount paid out on his check or order to one other than the bank itself, the circumstances must be such as to raise a presumption of knowledge that the depositor is acting dishonestly, or adequate notice to the bank may come from circumstances which reasonably support the sole inference that a breach of trust is intended. Simple neglect to inquire about circumstances which ought to have excited attention is not enough, just as it is not enough to prove a want of good faith in purchasing negotiable paper. Commercial transactions are not put within the strict fetters of constructive notice.

(Citations, punctuation and emphasis omitted.) *Bank South,* supra at 781-782 (2). Because Leslie possessed authority to endorse deposits to and withdraw money from the account pursuant to the corporate resolution, there was nothing to put Citizens Bank on notice that illegal activity was occurring. See id. at 782 (2). We therefore find that Citizens Bank is protected from liability pursuant to OCGA § 7-1-352.

3. Atlanta Sand also argues that summary judgment was improperly granted because questions of fact remain as to whether Citizens Bank is liable for conversion. Specifically, Atlanta Sand contends that in allowing Leslie's wrongdoing, Citizens Bank did not act in good faith and in accordance with reasonable commercial standards of fair dealing. This argument, however, relates back to Atlanta Sand's contention that the deposits were accepted over Leslie's forged endorsements. See *Bank South,* supra at 781 (1).

---

[9] *Family Partners Worldwide v. SunTrust Bank, Atlanta,* 242 Ga. App. 618-619 (2) (530 SE2d 742) (2000).

Having found that Leslie was, in fact, authorized to endorse deposits and that Citizens Bank is protected from liability pursuant to OCGA § 7-1-352, Atlanta Sand's final argument is without merit. See *Trust Co. Bank of Augusta v. Henderson.*[10]

Judgment affirmed. *Miller and Bernes, JJ., concur.*

DECIDED OCTOBER 31, 2005.

*Miller, Cowart & Howe, Craig N. Cowart*, for appellant.

*Phillips & Phillips, Arthur L. Phillips, Pamela L. Coleman*, for appellee.

---

[10] *Trust Co. Bank of Augusta v. Henderson*, 258 Ga. 703 (1) (373 SE2d 738) (1988).